Mr. Mosley, whenever you're ready. Thank you, Your Honor. It's a pleasure to be before this court this morning, and especially to represent Estes Express. This issue before you has never been addressed by this panel before, by this court before, so whatever two of you come up with is going to be the law. So you all have the opportunity to plow new ground. The Marine Corps Exchange contracted with Salem, a federally authorized freight broker, and normally you would expect a freight broker to then enter into subcontracts with its contractors, with someone like Estes Express. That did not happen here. Salem did not enter into any. I thought I saw something in the Court of Claims opinion that suggested that there was some contract between them. There was no contract, Your Honor, between them. You said in your – I think I've got this right, but tell me if I'm wrong. I think there was an allegation in your complaint that there was a contract, but the complaint may not govern once we're into the evidentiary part, and you now say there was not, in fact, any contract between Salem and Estes. Well, Your Honor, I guess I should be more clear. There was no written contract. There was a course of dealing between the parties before Salem stopped paying bills, but there was no written contract that could have easily resolved the issues before the court today. Well, I took it that this contract issue, I guess, is more harmful than helpful to you. That is, there's clearly bills ablating our contracts, and that's between you and Shipper and possibly Consignee, and we'll get to that. But under Johnson Controls, there's at least a possibility that some other contract might sort of supersede some of those rights. So I took it that it's important to your case now that there not actually be another contract, in particular, another contract provision, whether written or oral, between you and Salem that changes the obligations that would otherwise follow from the bills ablating. Well, I think it would be disingenuous for me to tell the court that Estes would say it was not entitled to payment from Salem. But under federal transportation law, even if there is a contract there, that bill ablating still creates privity between the shipper, which, and this is kind of an odd situation, because this is inbound freight rather than outbound freight. Normally, when we're talking about freight, we're talking about a manufacturer somewhere who's making something and arranging for shipment of its own product. So that party is the shipper and is also the consignor. Here, we've changed those because technically the shipper here is the party arranging for shipment, which is the Marine Corps Exchange. And while the freight does not... Is that true as to all of your claims, or are there some private party shippers, or is it true that as to everything at stake here, the government is both shipper and consignee, or at least shipper? The government is shipper and consignee in all of the shipments, and sometimes they're actually the consignor and the consignee. And the distinction is the consignor is where the freight originates. Now, it may not be... In this case, the Safi Company was on some of the bills of lading we submitted to the court as exemplars. Who is... Who are they? They make clothes, and those clothes are in turn sold in the Marine Corps Exchange. And so that entity is the consignor because that's where the freight originates. Now, most of the time, probably 80%, 90% of the time in the freight world, your consignee, excuse me, your consignor and your shipper are the same person. But here, those have been broken because the Marine Corps Exchange is actually arranging for inbound freight. So rather than having Safi ship the freight, the Marine Corps arranges for shipment of the freight through its purchasing agent, as you mentioned, the Johnson & Johnson. I mean, is it disputed? I just want to understand what's in dispute. Do I take it it's not disputed that as to everything that's at issue here, the government is both shipper and consignee? I believe that's true, Your Honor. And do I take it also that outside government context, ordinary bill of lading law, both of those, particularly somebody who is the same person but in both positions, would in fact be a party to the bill of lading? That's correct, Your Honor, outside of the government lingo. Now, let me make one more distinction or one more point along the lines of your question, your inquiry. When outside of, in transportation law, merely because there's a Salem doesn't mean there's not privity because of the bill of lading. So if you look at these cases, you can argue about who owes the freight. You can go out and you can look at Oak Harbor and commercial metals and all those types of cases. And you'll see in that that no one ever says there's no privity because there's always privity with the bill of lading. There's got to be a reason to establish privity. And here the bill of lading mentions a Marine Corps only in somewhat passing as the payor. I mean, it's got it says to bill to the Marine Corps in Cairo, Salem. How does that establish privity? Your Honor, I believe that all that's the only mention of the Marine Corps in the bill of lading. Well, the Marine Corps is also the consignee in the bill of lading or at least one of their locations. One of the Marine Corps locations is going to be a consignee. But but also on the where it says in the bill to box in that bill to box, it says it doesn't say Salem. And I guess that would be that would be the best way to say it is if it says Salem, then I think the government's argument might be more valid. But Estes knows that Salem made the arrangements, correct? Certainly, Your Honor. But again, if we take this out of the government context, there's no question that the Marine Corps exchange is still liable for the freight, even though there is a Salem. There's no question about that. How do you arrive at that when it just simply says Marine Corps and then to be able to care of and enlist the other address? I mean, in the shipping world, you do have the the the broker who contacts the shipper and makes all the shipping arrangements. You're dealing with the with the broker at that point, not the Marine Corps. Your Honor, that's correct. And in a certain way of speaking, but legally, that broker does not break the liability of the shipper for freight charges. And if we were to if we were to go and look at, for example, the Hawkspeare case in the Fourth Circuit, the Oak Harbor case in the Ninth Circuit, those types of cases make it very clear that that absent some specific language to the contrary, which doesn't exist here, that the that the shipper, the party arranging for shipment remains liable for the freight, even though they have to pay twice. They may have to pay a broker who goes out of business and then they have to pay the carrier who didn't get paid the first time. And so that is that is one of the cases we cite in our briefs is the bedrock rule of motor carrier law is the carrier. That's true. But you're talking between the government and the and the broker, not between the transportation company and the government. And your honor raises a good point. Maybe that's a point. That's something that we talk about later. And when we talk about the merits of the case at this point, the only thing that our obligation is to prove some evidence of privity. And I think that if we were if we were if we were not in this court and we were in a in a in a private court without the government involvement, nobody would say there's no privity here because there's there's absolute privity between the parties to the bill of lading. And so the and so and so we've got to get to privity and then we can talk about who's ultimately liable for the freight. But the court, the court below dismissed the case based on lack of privity and lack of a money mandating statute. And we believe that obviously that was incorrect. And the government here, am I remembering right, that the government in its contract with Salem directed Salem to use your standard commercial bill of lading? There was. Something close to that or am I wrong? There was there was some language in the in the Salem government contract that said what was supposed to be in the in the on the bill of lading. And specifically directed Salem. Right. To use the bill to language. No, no. And I'm talking about something that's maybe even prior to not not prior temporarily, but logically prior to that. Did the government specifically somehow endorse the use of the standard form bill of lading? The contract doesn't say every term that has to be in the bill of lading, but they do direct and they're under modern deregulated freight. I guess here's what I guess I'm remembering at age 64 that the contract dictates that Salem ensure vendors complete bills of lading in accordance with the rules of the National Motor Freight Uniform Freight Classification. Right. And the NMFC, as as that's described there, has standard language in its bill of lading that would govern this type of freight. This is this is what's called less than truckload freight, which means a truck has the freight of the number of shippers on it at the same time. And so that's where the NMFC bill of lading comes in. And that that bill of lading would would have options for the government to disclaim liability for freight charges. And those that that that those those options for disclaiming freight charges were not taken. So so there were there were ways that the bill of lading could have been completed that would have said the government is not responsible for freight charges. That that did not happen. What about count one of your complaint? And I'm looking at page 15 of the record, paragraph 16. It says pursuant to the bill of lading, defendant Salem is directly liable to the plaintiff for freight charges for loads brokered by Salem. Aren't you aren't you there making a concession and admission that that it's Salem that's directly liable to the plaintiff for those charges and not the government? And your honor, I know that that that sounds foreign to you, that the broker and the shipper can still be on the hook for the same freight. But absolutely, that's our position is that the broker is liable and the shipper. You're trying to establish privity under the bill of lading, correct? Yes, your honor. Yet you inform the court in your complaint that looking at the bill of lading, defendant Salem is directly liable to the plaintiffs. Isn't aren't you setting the parameters of your of your claim? And I don't believe so, your honor, because I think that our our position is that both parties are liable. And if Salem had paid it, that would have extinguished the liability of the Marine Corps Exchange. But under motor carrier law, when when when the broker doesn't pay the carrier, excuse me, the shipper, in this case, the Marine Corps Exchange remains on the hook. Why don't we hear from the government? Thank you, your honor. Mr. Volk. May it please the court. The court of federal claims properly dismissed the complaint in this case for lack of jurisdiction. And this court should affirm. Estes did not have a contract with the government. Why isn't the bill of lading exactly that? Bill of lading is a subcontract. Why? Contract between Salem. I'm sorry. Salem did not contract with the United States to provide transportation. It contracted with the United States to provide a service of arranging transportation by others. So Estes was not performing a duty that under the contract that Salem had with the United States was a duty Salem owed. That's what a subcontractor does. A contractor says, I will provide to the owner a certain good or service. And then the contractor goes out and gets other people to help provide that. Estes wasn't providing brokerage or arranging services. Well, your honor, the contract routinely refers to subcontractors, carriers, vendors. The contract obligated Salem to arrange for the transportation. And who Salem chose to carry the loads was for Salem to decide. Is there something specifically in the Salem government contract that refers to carriers as subcontractors? I don't know of anything in the contract, your honor, that links, that uses the word carrier and subcontractor at the same time. There is the use of the word subcontractor. Right, so Salem couldn't go out and hire some other transportation arranging company to fulfill its, namely, Salem's duties. Not without the authorization of the government, your honor. Right, that's what I mean. That would be a subcontractor. We're too busy. We need some help from other arranging companies. Well, some language I do want to point out to you, your honor, on JA-53 in response to your first question, is that at the top of that page, the contract with Salem provides that the contractor, meaning Salem, shall furnish all personnel services and supplies, including contractors' costs and profits, necessary to provide labor, transportation, and freight management services to the headquarters. And so our view is that this contract did make Salem responsible for providing the transportation that was necessary, and how to go about that was up to Salem. I'm sorry. This seems actually absolutely at the heart of the case, so I want to stay with this, okay? So at A-53, what contractor shall furnish is not transportation. It's transportation and freight management services. Estes is providing transportation. Salem was not obligated here to provide transportation. It's obligated to provide management services. It certainly was the contemplation of the government in Salem that Salem would hire carriers like Estes. Would hire them. The contemplation was that Estes would, that the carriers would be in a contractual relationship with Salem to do something Salem had promised to do, like provide the actual carriage? I'm a little bit confused by your phrasing, but the expectation of the government certainly was that Salem would contract with carriers to provide transportation services. Under standard bills of lading in which the government was shipper and consignee and under ordinary bill of lading law was actually in privity with the carrier? The government would not be in privity with the carrier. As a shipper consignee, it wouldn't? No, because the government had made other arrangements. And so in some of the cases like the Oak Harbor case recognized, the party is free to contract any way it wishes. If it contracts other than through a bill of lading in advance, it's those terms that will govern. And in response to some of the things that came up during Mr. Mosley's argument, I do want to make sure the court is aware of paragraphs 5 and 6 in the complaint. And Estes is bound by the complaint. But why is it – why does the – I guess maybe put it this way. Why isn't it perfectly possible for them to allege dual liability? Brokers liable and also, of course, shipper consignee liable. Why is one inconsistent with the other? It's not necessarily inconsistent in all cases. In some cases, whereas just between private parties, there may be liability amongst more than one party. But in this case, the first step that Estes has to – or hurdle that Estes has to meet is to establish jurisdiction. In its complaint, Estes argues or alleges jurisdiction under the Tucker Act. But Estes doesn't have any contract with the government. There's not even an allegation in Estes' complaint. But this is what I guess I keep getting stuck on. The bill of lading is a contract between the carrier and the shipper and the consignee. Here the United States is at the same time shipper consignee. If you didn't know anything more, the carrier, namely Estes, has a contract. Each bill of lading with the United States. So what's either wrong with that or overrides it? Well, what's first wrong with that is paragraph 6 of the complaint. Paragraph 6 of the complaint on JA 14 says, under the bills of lading, various MCX locations were listed as the consignee, while various third parties were listed as the shipper. So that's the first part that's wrong. Now, the part as to why the consignee, which here is alleged to be – So I did ask just a factual question of your friend on the other side. Are all of – is all of the dispute here about shipments in which the United States was shipper? He said yes, and that that wasn't disputed. Are you disputing that? Yes. Under the complaint, that's not what the complaint says. So the facts that we're working with are what's alleged in the complaint, and that is not what is alleged in the complaint. Were additional facts introduced or argument at the motion, the motion stage, that amended or that the court considered in addition to what was alleged in the complaint? The only factual matters that the court looked at beyond what was in the complaint was what was in what is undisputed as the contract between the Marine Corps and Salem. So other than that, there wasn't any inquiry that I recall beyond the facts that were alleged in the complaint, and those were treated as true. You don't deny that a bill of lading is a contract? It usually is. When it comes to the government, it gets a little bit more complicated. There's a difference between straight bills – Let's start with the usually is. Typically, a bill of lading is a contract between several parties, two parties or more. Correct. Okay. So if we want to see who those parties are, we look to the face of the bill of lading. Yes, assuming there's no other previous contract. Well, between Estes and the government, there is no other contract.  Okay. So let's look at the bill of lading and see if the government and Estes are named in the contract. It seems to me that they are. They're not, Your Honor. If you look at the bill of lading, and so for example on JA-138, the – Look at the billing box. Right. And the important words even are in the header to the billing box, which is third party. What page are you reading, please? Appendix 138 is an example. And so Estes provided to the court at the motion to dismiss stage five sets of shipping documents. And one of those three documents for each of those five sets is a sample bill of lading. And so the shipper, ship from, is on this one on 138, MJ Sophie Company. The ship two is a Marine Corps Exchange location. And then it indicates third party freight charges, bill two. And it says Marine Corps Exchange, care of Salem Logistics. You have the Marines that are receiving the shipment and under the agreement that Estes entered into, they're billing the Marine Corps Exchange in care of Salem. So as far as Estes is concerned, on the face of this document, Salem is just collecting money and putting it in the bank for the Marine Corps. It's the Marine Corps that is receiving the revenue. Receiving the shipment and paying Salem's bill. The contract between the Marine Corps and Salem provided on appendix 59 and 60, the Marine Corps pays Salem, Salem pays the carriers. It wasn't the government that went to Estes and told Estes to come pick up this load. It was Salem. And this instrument here is something generated by the vendor, but it's an instrument between Estes and Salem. Subcontracts cannot create privity with the government. The bill of lading is not a contract between the carrier and the shipper. Put aside these examples about SOFI, but if you look at the complaint, the complaint says in the paragraph you were reading from that various shippers, including the Navy, including the United States, entered into these things. So perhaps it doesn't matter at this point whether all of the bill of ladings involve the United States as shipper. The allegation of the complaint is some of them do. Yes, except that in response to the government's motion, it is noteworthy, we think, that all five of these sets of shipping documents, none of them have the government as the shipping or shipper or ship from party, however we're. The Court of Federal Claims said, I think, in terms, in some cases government entities were listed as both consignee and shipper. And we're not, and to be clear, I'm sorry, Your Honor, we're not disputing that at this point. We will treat that as true. Okay, well let's assume that, let's focus on one bill of lading. We don't have one that we can look at, but we assume now its existence. There's one that says shipper, United States. Consignee, United States. Estes, carrier. And what's more, although it may not in fact be relevant, here's what you do about billing. You bill to the United States care of this other company, Salem. That really isn't a contract with the United States? No, it doesn't have the elements required to establish a contract with the United States. And actually a good persuasive discussion of this, although not binding on this court, is in the Court of Federal Claims decision in YRC. It actually involved the exact same contract with Salem, that's at issue here, and another carrier sought to recover against the government. I'm just not sure that that discussion is persuasive, that's all. I mean, I realize it's a discussion of the point, but I take it from the Ninth Circuit Oak case and three or four other circuits that it's absolutely rock-solid accepted law on bills of lading that they are contracts between the carrier and the shipper, even when there's a broker who's made the arrangements. In the absence of another contract in which they contract that. So is that what this government's position is? That even if there were no other contracts between the government and Salem out there, then yes, you would accept the notion that this is the contract in this setting. But is the government's position that in this circumstance, there's an overriding contract which establishes the relationship between the parties, and so that overrides whatever one would take away from this bill of lading? Is that the government's position? It's certainly the government's position that that overriding contract with Salem is what defines the government's rights, but that's the only contract in which the government made acceptance by the government, in which there was a mutual assent to enter into that contract. With these bills of lading, you do not have an authorized representative of the United States. Who's putting – I'm sorry, but the shipper is figuratively standing at the loading dock and saying, dear carrier, please accept this for carriage. I mean, nobody kind of walked into the Navy supply store outside the government surreptitiously, took the Navy's goods, and put them on the carrier. That was the government, right? There is someone who works for the government at the warehouse, not a person who's authorized to enter into contracts because the contract had already been entered into by the authorized contracting officer in Salem. So there's an ordinary bill of lading law. The shipper has a contract with Estes here, and you're saying that there's another contract, not a contract involving Estes, that overrides Estes' rights? Because you're pointing to a contract, namely the Salem Marine Corps contract, to which Estes was a stranger. Maybe this is a clearer way to say it. The only way in which Estes, in these circumstances, would have contract rights under a bill of lading is if it were a government bill of lading. A government bill of lading, as a number of cases indicate, is different than a straight bill of lading. These were straight bills of lading. A government bill of lading has a signature from a government-authorized person. That is a contract between the government and a carrier. Even though there's a whole bunch of, I think, is it federal acquisition regulations, or I think it's federal acquisition regulations, a government bill of lading basically used for international and a few other things. But otherwise, your government use ordinary commercial bills of lading, and that's not an acknowledgment of the ordinary law that applies to who's obliged and not obliged on those standard documents. No, Your Honor. I'm not understanding exactly what you mean by ordinary commercial bills of lading. Commercial bill of lading, something other than what's called a government bill of lading. The way we understand how the government generally acquires transportation is that most frequently there's a tender. If there's not a broker in this case, where you have a contract like we did here between the government and sales, you'd have a tender offer from a carrier, and then you'd have a government bill of lading in response to that offer accepting its terms and forming a contract. And we think that's expressed in, forgetting whether it's DOL from this court or Interpostal Express, but that arrangement is not what we had here. Here we had the government enter into one contract. The authorized government official entered into one contract. That contract was with Salem. The Court of Federal Claims properly recognized that the relationship between Estes and Salem was as a subcontract. Why did the government then insist that the payment box include the Marine Corps? I mean, that was a contractual obligation that the payments are to be made to the Marine Corps care of Salem. What that box reflects, Your Honor, is the provisions in the contract. And when we read the whole contract, it's very clear. We may have a different story if it never did say Marine Corps care of Salem. But it does say that, and it does say that at the instruction of the government that told Salem each one of these bills of lading must include this legend.  And looking at appendix page 99, the way the contract requires that all shipments that are FOB origin must be shipped on a third-party collect bill of lading. Freight charges are not to be added to a merchandise invoice unless you're directed to do so by Salem Logistics or MCX operations. When you prepare the BOL, indicate that the freight charges should be third-party bills. This language simply reflects the arrangement that is very clear in the contract, that is that the government will pay Salem and Salem will pay the carrier. And it doesn't... It could have done that without having that information placed on the bill of lading. I don't know for sure whether that's true or not, Your Honor. Why couldn't they just agree? You contract with the transportation company, collect the revenue, and then you send me the check. Why does a check have to be made out to the government? The check would not be made out to the government. I mean, the government's writing the checks and sending them to Salem. Now, why it needed to include that exact language on the bill of lading or did it, I don't know. It may not have needed to, and perhaps... That's what makes this case different from the others, isn't it? No, it doesn't make it different from all the other cases. It makes it different from some of the other cases. For example, the YRC case is exactly the same. It's the exact same contract, and that was a Court of Federal Claims case. It's not binding on this court. But what the Court of Federal Claims has invariably decided is that carriers have to demonstrate privity of contract with the government. If you don't have a contract with the government, you cannot establish jurisdiction in this court. SEs didn't have a contract with the government. Those bills of lading, you do not have a signature of a government representative anywhere on there. You do not have authorization from an authorized government representative anywhere on there. And the Court of Federal Claims properly dismissed the case. SE, I'm well over my time. Yes, thank you. Mr. Mosley, any final thoughts? Thank you, Your Honor. I would go back to the point that we're talking about privity. And if we're in any other court in the country and we're talking about privity, nobody's even discussing the fact that there's no privity between a shipper, a consignee, and the carrier. So I would submit that— Does it matter that there's no signature from the shipper on the bill of lading? There is a signature on the delivery receipt that will be at the delivery location. So all of these— The consignee is signing. The consignee, the Marine Corps Exchange location, and obviously there were many of them to which these goods were shipped. But someone would have signed the delivery receipt there and received a copy of the bill of lading at that point. Why did you submit only bills of lading that don't list the United States as a shipper? Well, Your Honor, there is in the record that approximately a fourth of the shipments were base exchange transfers. So there was an abundance of product at one base exchange. It was shipped to another base exchange. So in those roughly 20-25% of the shipments, the government would have been consignee and shipper. However, I would point out that the shipper— There is a shipper box on the bills of lading that are submitted that it says shipper. But it really, if we were going to be analyzing that from a legal standpoint, it should say consignee. Because that's just the location where it was picked up. That was not the party arranging for the shipment of freight. And so the shipper, in this case, in all of these bills of lading, the party arranging for the shipment is the Marine Corps Exchange through its agent. I mean, how do we know that whether by some paragraph of your complaint or otherwise, that all of the bills of lading involved here involve the United States as shipper? Well, Your Honor, the position we would take is that the Marine Corps Exchange hired Salem. And therefore, they were—whether the Marine Corps Exchange did it through their own shipping clerks, the Marine Corps Exchange employees running the shipping department, or whether they outsourced that to a broker, that process of arranging for shipment, in either respect, they would be the shipper. So they would be the party arranging for shipment. So whether they do it themselves through government employees working at the Marine Corps Exchange, or whether they do it through Salem as an outsource process, they would still be—and we've alleged that in the complaint—that that's the way the process worked.